IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:09CR264 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| LYNN PRETENDS EAGLE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's objections, Filing No. 27, to the report and recommendation ("R&R") of the magistrate judge, Filing No. 22 and Filing No. 24, denying the defendant's motion to suppress, Filing No. 13. The defendant is charged in Counts I and II of the Indictment with harboring and concealing a person for whom an arrest warrant had been issued in violation of 18 U.S.C. § 1071. Filing No. 1, Indictment. Under 28 U.S.C. § 636(b)(1), the court makes a de novo determination of those portions of the report and recommendation to which the parties object. *United States v. Lothridge, 324 F.3d 599, 600-01 (8th Cir. 2003)*. The court has conducted a de novo review of the record, including the transcript of the hearing which includes the findings and conclusions of the magistrate judge, the exhibits and the relevant law. The court agrees with the magistrate judge's conclusions and incorporates the facts set forth in his R&R. The court overrules the defendant's objections to the R&R, denies defendant's motion to suppress, and adopts the report and recommendation of the magistrate judge in its entirety.

The court need only briefly summarize the facts. On or about October 28, 2008, the United States Marshal Service received an arrest warrant for a person known as Shawn

White for a violation of supervised release.  On October 30, 2008, an officer traveled to Valley, Nebraska, to the last known address of Mr. White.  A vehicle parked there was registered to Lynn Pretends Eagle.  A man exited the home.  Officer Van Buskirk identified himself and said he was looking for Shawn White.   The person identified himself as Ms. Pretends Eagle's son, said he knew Shawn White, and indicated he had not seen Mr. White in three weeks.  Another individual left the residence and was asked the same questions but did not respond.  Officer Van Buskirk then approached the home and asked Ms. Pretends Eagle if she knew Shawn White.  She stated that they had previously dated, they were broken up now, and she had not seen Mr. White for a while.  She stated that Mr. White was not in her home.   Officer Van Buskirk was alone, so he did not ask to search the residence.  He then explained the penalties defendant could face for harboring a fugitive.

On December 1, 2008, Deputy Mark Anderson took over the case.  He spoke with Mr. White's sister on a number of occasions who told him she believed that her brother was staying at defendant's home. On December 6, 2008, Deputy Anderson received a text message from a confidential informant that Mr. White was at defendant's house.  Deputies Anderson and Eric Mayo went to defendant's house.  They did not obtain a search or arrest warrant for defendant or her home.  On the way they were informed that Mr. White's car was found at 156th and Dodge Streets.  They then teamed up with two Valley police officers and approached defendant's house.  They heard voices and knocked on the door.  It became silent and then the officers saw a shadow run by the curtain.  Approximately two minutes later the defendant opened the door.  Deputy Anderson identified himself and told the defendant she needed to step inside and speak with him.  When asked about Mr.

White, the defendant said he was not there, but she had been sleeping in the back room and was not sure. She was told to stay in the living room while Deputies Anderson and Mayo began a search. At this time the officers had their weapons drawn. They then went into the garage where there were several people playing cards, but none of them had seen Mr. White. Upon going to the basement, the officers found Mr. White under a pile of clothes next to the bed. Mr. White was arrested. At no time did the defendant receive her *Miranda* rights.

The magistrate judge first found that the defendant did not consent to the search. The magistrate judge then determined that the officers did not need a search warrant, as they had reason to believe that Mr. White was residing in defendant's home. Further, the magistrate judge found there were exigent circumstances to justify the warrantless search.

The magistrate judge also determined that the defendant did not receive *Miranda* warnings but that the circumstances did not require them. He found that while the defendant was interrogated, she was never in custody. He further found the statements were not involuntary since no coercive police activity occurred.

**Search and Seizure**

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). The Supreme Court has further stated:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home

> -- a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[at] the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id*. at 589-590.

The defendant argues that there existed no search warrant, consent or exigent circumstances that would permit the search of her home. *See Steagald v. United States*, 451 U.S. 204 (1981) (where officers looking for a fugitive without a warrant entered a home, drugs found in residence suppressed). The Eighth Circuit adopted the holding of *Steagald* in *United States v. McIntosh*, 857 F.2d 466 (8th Cir. 1988), stating, "The [*Steagald*] Court . . . carefully distinguished entry with an arrest warrant for a person living in the home from entry with an arrest warrant for a person not living there. The former is constitutionally permissible, the latter an unconstitutional invasion of the privacy of the home in the absence of a warrant to search that home. We repeat the Court's concluding rationale for this distinction." *Id*. at 468. There is an exception if the person is a co-resident. *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996). The officers need not be correct; they must only reasonably believe that the defendant lives there. *Id*. The magistrate judge relied on this exception because the arrest warrant listed this as White's last address, the defendant's sister said he was staying there, and the confidential information said he was there early on the morning of December 6, 2008.

4

However, the defendant argues that one of Mr. White's supervised release violations which caused him to be sought was the failure to notify the probation office that he had changed addresses and no longer resided with this defendant. Thus, argues the defendant, there is no evidence that this was the defendant's residence. Further, the defendant argues there are no exigent circumstances to justify this search. The Supreme Court has held that one must look at the gravity of the offense, and that home entry is rarely permitted absent a significant offense. *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). Here, Mr. White was wanted for failure to submit his reports, obtain employment, to notify his change of address, and one positive test for methamphetamine. These are minor offenses, argues the defendant, and would not give way to exigent circumstances. Further, in spite of the circumstances and knowledge that Mr. White was seen at the residence, the officers did not get a search warrant. The defendant then argues that the fruit that must be suppressed is Mr. White. *See United States v. Adams*, 621 F.2d 41 (1st Cir. 1980).

The government argues that the body of Mr. White will not be offered at trial, just the testimony that his body was found there. Counsel contends the testimony can't be suppressed. No support is offered for this argument. In the alternative, the government argues that the United States Marshals had information from the United States Probation Office as well as from the sister of the defendant and an informant that Mr. White resided in that residence. Thus, argues the government, *McIntosh* and *Risse* are applicable. Finally, the government argues that the defendant told the Deputy Marshal that it was "ok" to search.

The magistrate judge determined that exigent circumstances existed, as the officers believed that Mr. White was living or residing at the defendant's residence, because it was Mr. White's last known address, there is a warrant for Mr. White's arrest, he is a convicted felon, Mr. White's sister stated he was probably at defendant's home, and the unidentified party stated Mr. White was at the defendant's home. Consequently, the magistrate judge determined that consent did not occur, but that under these circumstances, consent was not necessary. Accordingly, the magistrate judge found there was no unconstitutional fruit to protect.

The court agrees that the defendant did not consent to the search in this case. The court further agrees that the officers reasonably believed this was the residence of the defendant and that they had a valid warrant to arrest the defendant. The court agrees with the government that *McIntosh* and *Risse* are applicable in this case. Accordingly, the court will adopt the findings and recommendations of the magistrate judge as to the search of the residence.

### *Miranda* Warnings

The defendant argues that the finding that she was not in custody is erroneous. She was confined to her living room while the Deputy Marshals searched her home. Second, the defendant contends that her statements were not voluntary. The defendant argues that the Deputy Marshals entered her home at 3:00 a.m. and began a search without consent. According to the defendant, she was told what would happen to her, namely, that she could be indicted for harboring a fugitive and for making false statements. This, argues the defendant, is a Fifth Amendment violation.

The government argues that the defendant was not in custody on December 6 and, therefore, *Miranda* warnings did not have to be given. See *Miranda v. Arizona,* 384 U.S. 436 (1966). Counsel argues that the real argument is that the defendant "lied" and this is an issue for trial.

Deputy Anderson testified that:

> And then eventually I said, well, I have information that he's here and I'm going -- we're going to have to search and make sure that he isn't here.
>
> Q. Did she respond to that?
>
> A. She said, okay, but he's not here.
>
> Q. And then did you begin to search?
>
> A. Yes.

Tr. 33:8-14.

> Q. And then after you found Mr. White, but before you left Valley that evening, did you have any more conversation with Ms. Pretends Eagle?
>
> A. Yes. I basically told her what could possibly happen now that, you know, she had made false statements to us about Shawn being there.
>
> I told her she could be indicted for harboring a fugitive and aiding and abetting and I probably talked to her for probably four or five minutes.
>
> Q. Did she continue to assert that she didn't know he was there?
>
> A. Yes.
>
> Q. That was her story throughout?
>
> A. Yes, she the whole time denied having any knowledge of Shawn White being inside that residence.

Tr. 38:20-39:11.

The question of voluntariness is determined by the totality of the circumstances. *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004). The government has the burden of proof by a preponderance of the evidence that Ms. Pretends Eagle's statements were voluntary. *Id.* 18 U.S.C. § 3501(b) sets forth the factors to be considered in determining whether a confession was voluntary:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment; (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession; (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement can be used against him; (4) whether or not such defendant had been advised prior to questioning of his right to assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b).

The magistrate judge determined, and this court agrees, the defendant did not give consent to search her residence. The officers told her they were going to search. The magistrate judge then found the defendant was not in custody, so there was no custodial interrogation, and concluded based on the circumstances there was no Fourth or Fifth Amendment violation. Tr. at 58-59. Further, the magistrate judge found no issue as to voluntariness, as there was no coercion and the defendant was not in custody. This court agrees. The defendant was asked if Mr. White was in the home. She responded accordingly. There is no indication that the police coerced her. There is no evidence that the defendant was in custody, and in fact she was not arrested after Mr. White was

discovered hiding in the bedroom. Accordingly, the court will adopt the findings of the magistrate judge in this regard.

THEREFORE, IT IS ORDERED:

1. Defendant's objections, Filing No. 27, are overruled;

2. Defendant's motion to suppress, Filing No. 13, is denied; and

3. The report and recommendation of the magistrate judge, Filing No. 22 and Filing No. 24, is adopted in its entirety.

DATED this 23rd day of December, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.